[Civ. No. 18144.   Second Dist., Div. Three.   Mar. 7, 1951.]

Estate of VIANNIA I. CHESNEY, Deceased.   MELVIN B. BOSWORTH, as Executor, etc., et al., Appellants, v. HELEN HARRIS, Respondent.

John S. Bolton for Appellants.

Dunnum & Dunnum for Respondent.

SHINN, P. J.—Appeal from judgment denying probate of the last will of Viannia I. Chesney, deceased, by the proponents thereof, Melvin B. Bosworth and Helen S. Bosworth, husband and wife.

Mrs. Viannia I. Chesney, a widow, died testate on February 19, 1949. By her last will, dated December 4, 1948, she devised and bequeathed all her estate, real and personal, to appellants. Melvin B. Bosworth, named as executor, petitioned for probate of the will. Helen Harris, of Joplin, Missouri, a niece of decedent, filed opposition thereto, alleging that the will had been procured through undue influence exerted upon the decedent by proponents, that decedent was not of sound mind and that the will had not been duly executed.

Trial by jury was waived, and the court found that the testatrix, although gravely ill at the time of execution of the will, was of sound mind and that the will was executed in the manner required by law. It was found that a confidential relationship existed between testatrix and proponents; that the physical condition of decedent at the time was such as to permit of circumvention of her will; that proponents were active in procuring the execution of the will and unduly profited thereby to the exclusion of any relatives of decedent. It was concluded that the evidence was sufficient to prove the use of undue influence by proponents and that the will should be denied probate.

The record shows that Mr. and Mrs. Bosworth lived across the street from the Chesneys in Glendale and although the families were acquainted with each other, they did not become friendly until after Mr. Chesney's death. Mrs. Chesney, who was then about 75 years of age, lived alone. She received a small pension of about $51 a month and, for a time, some aid and assistance from the Masonic Lodge in the management of her affairs. In the spring of 1948, Mrs. Chesney, a woman of strong likes and dislikes, informed Mr. Vold of the Masonic Lodge that she no longer cared to have him assist her in any way. Her physical condition was impaired by reason of two strokes she had suffered and one side of her body was partially paralyzed so that she moved, talked and ate with diffi-

culty. About this time, she sprained her ankle and as she was rendered unable to care for herself, Mrs. Bosworth began visiting her with items of food and doing her telephoning for her, since Mrs. Chesney had no telephone in her home. In the latter part of May, or early in June, Mrs. Chesney asked Mrs. Bosworth to call an attorney for her and instruct him to prepare her will. Mrs. Bosworth called an attorney who was a friend of the Bosworths and unknown to Mrs. Chesney. The will was dictated to the attorney by Mrs. Bosworth in accord with what she said were Mrs. Chesney's wishes. This will, executed on June 24, 1948, left a wardrobe trunk to Helen Harris, contestant here, and the balance of the estate to a sister-in-law of the decedent. During this time Mrs. Chesney was cared for by various housekeepers and nurses and by Mrs. Bosworth. In November Mrs. Chesney was worried about her finances and inquired of the Bosworths whether she could borrow money on her home. Mr. Bosworth told her it was doubtful, since she could show no ability to pay off a loan. Shortly thereafter, in the presence of his wife Mr. Bosworth proposed to Mrs. Chesney "that since she had liked us so well and trusted us" if she would deed the Bosworths her property they would borrow on it and use the money to take care of her in her home for the remainder of her days. After considering the matter Mrs. Chesney agreed and on November 18th the Bosworths caused an agreement and deed to be drawn by the attorney who had drawn the first will. Mr. Bosworth brought witnesses and a notary to Mrs. Chesney's home that evening, when the agreement and deed were executed. Present at the time were proponents, Mrs. Feather, the housekeeper, a nurse, Mr. Farr, a neighbor and Mr. Sayre, a notary public. At this time, the June 24th will was formally revoked. Dr. Richardson testified that he called on Mrs. Chesney twice on November 18, 1948, and that she was extremely ill with acute heart failure. He stated that he thought another doctor had been called during the preceding night. No other doctor was called as a witness. At this time Dr. Richardson wanted to send the testatrix to a hospital but she refused to go. Shortly after receiving the deed to the property, the Bosworths borrowed $5,000 thereon and thereafter Mrs. Chesney's bills were paid by them. Neighbors testified that after the Bosworths took charge of the affairs of Mrs. Chesney the housekeeper, the nurse or Mrs. Bosworth were always with her and they were unable to speak with her alone.

Soon after the execution of the agreement and deed Mrs. Chesney told Mrs. Bosworth that she wanted to change her will so that everything she possessed would be left to the Bosworths. The last will (the one under consideration here), prepared by the same attorney at Mrs. Bosworth's direction, was executed on December 4, 1948, with Mrs. Bosworth's mother and son-in-law, and Mrs. Feather acting as witnesses. The will was read to Mrs. Chesney, who nodded her assent to its terms, then read it herself, and propped up in bed by Mrs. Bosworth, wrote her name in an almost illegible hand. Dr. Richardson testified that he was called to see Mrs. Chesney the next day and that she had apparently suffered another heart attack the previous night and was acutely ill.

██ There is ample evidence in the record to substantiate the findings of the trial court that a confidential relationship existed between Mr. and Mrs. Bosworth and the decedent, that proponents were active in procuring the execution of the will and unduly profited thereby. ██ Where such a confidential relationship is found to exist and the beneficiaries have been active in procuring the execution of the will to their undue advantage, a presumption of undue influence arises. (*Estate of Brown*, 89 Cal.App.2d 496 [200 P.2d 888], and cases there cited.) In such a situation, the burden is cast upon the beneficiaries to overcome the presumption existing against them. ██ This the trial court held they failed to do. This court is empowered only to determine whether there is substantial evidence in the record to support the findings. From the foregoing brief summary of the evidence it clearly appears that a confidential relationship existed, that the testatrix was physically incapacitated, and apparently completely dependent upon the services of others, and that the Bosworths were active in procuring the execution of the will under which they benefited exclusively. Mrs. Bosworth gave instructions to the attorney, was present when the will was executed and, so far as the record discloses, Mrs. Chesney received no independent advice concerning the disposition of her property. There was no showing that the attorney ever consulted personally or at all with the testatrix concerning the terms of the will.

██ Appellants argue that they rendered faithful service to decedent and exhibited far more than neighborly kindness toward her; that respondent niece was not a natural object of her aunt's bounty and that it was not unnatural for them to be made sole beneficiaries. A niece is not, from relationship

alone, a natural object of the bounty of a decedent (*Estate of Nolan,* 25 Cal.App.2d 738, 742 [78 P.2d 456]), and respondent does not contend otherwise. The relations which existed between Mrs. Chesney and the respective claimants had a bearing upon the factual question of the use of undue influence. Even if we should agree with appellants that they had a better claim to recognition than respondent, this would not furnish a reason for disturbing the finding of the trial court upon the issue of undue influence. A reversal of the judgment upon the record that is before us would be without precedent.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.